IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV511-MU-02
(3:00CR210-Mu)

| | | |
|---|---|---|
| EVERTON BARTLEY, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court the petitioner's Motion
to Vacate, Set Aside, Or Correct Sentence under 28 U.S.C.§2255
(document # 1), filed October 4, 2004; the "Government's Response
To Defendant's [sic] Motion To Vacate . . . and Motion For Sum-
mary Judgment" (document # 6), filed January 18, 2005; the
"Petitioner's Response To Government's Motion For Summary Judg-
ment" (document # 8), filed March 2, 2005; the "Petitioner's
Reply To Government's Response . . . " (document # 9), filed
April 1, 2005; the petitioner's "Motion Requesting Leave From The
Court To Amend 28 U.S.C. §2255 Pursuant To Federal Rules Of Civil
Procedure - Rule 15(a)" (document # 10), filed November 2, 2006;
and on the petitioner's <u>de facto</u> motion to amend (document # 11),
filed January 11, 2007.

For the reasons stated herein, the petitioner's two requests
for Leave to Amend will be denied; the government's Motion for
Summary Judgment will be <u>granted</u>; and the petitioner's Motion to

Vacate will be <u>denied</u> and <u>dismissed</u>.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

According to the record of the underlying criminal case, on December 5, 2000, the petitioner and five other individuals were named in a two-count Superceding Bill of Indictment.  Count One charged that the petitioner, after previously having been con-victed of the felony drug offenses listed therein, had conspired with his co-defendants to possess with intent to distribute 500 grams or more of cocaine powder and 50 grams or more of cocaine base, all in violation of 21 U.S.C. §§846, 841(b)(1)A)(ii)(II), 841(B)-(1)(B)(viii), 841(b)(1)(A)(vii) and 851.  Count Two charg-ed that the petitioner, after previously having been convicted of the same felony drug offenses, had conspired to import into the United States 500 grams or more of powder cocaine, all in violation of 21 U.S.C. §§952, 963, 960(a) and 960(b)(2)(B)(ii).

Also on December 5, 2000, the government filed an "Informa-tion Pursuant To Title 21, U.S.C. §851," amended September 26, 2001, asserting that the petitioner had 9 prior felony drug convictions, consisting of convictions for Possession of Mari-juana and Possession of Marijuana with Intent to Distribute, sustained in Bergen County, New Jersey on April 10, 1992; one for Manufacture and Distribution of a Controlled Substance, sustained in Middlesex County, New Jersey on March 14, 1996; one for Pos-session with Intent to Distribute Cocaine, sustained in Middlesex

County, New Jersey on April 29, 1996; and two for Possession with Intent to Sell and Deliver Cocaine, two for Possession with Intent to Sell and Deliver Marijuana, one for Felony possession of Marijuana, and one for Maintaining a Place for Controlled Substances, all of which he sustained in Wake County, North Carolina on December 12, 1994.

During his arraignment proceeding, the petitioner entered not guilty pleas to the charges, and demanded a jury trial. To that end, on October 10, 2001, a jury trial commenced. During that trial, the government called, among other witnesses, four of the petitioner's five co-defendants.[1] The sum of all of the witnesses' testimony tended to establish that the petitioner, a Jamaican National, was the co-leader of a drug conspiracy network which smuggled multiple shipments of powder cocaine from Jamaica into the United States, and then converted those substances into crack cocaine for distribution in North Carolina and elsewhere. By the witnesses' testimony, the shipments were made over the course of an entire year.

The petitioner's method of operation consisted of him paying persons to work as couriers known as "Mules." Such Mules flew to Jamaica, picked up packages of powder cocaine and smuggled them

---

[1] The fifth co-defendant was the petitioner's girlfriend, Michelle Massey. Massey was not available to be called as a witness because at the time of the petitioner's trial, she had absconded pre-trial supervision and fled the jurisdiction. However, upon her recapture in 2004, Massey pled guilty to the charges and admitted her involvement in the offenses.

into the United States.  The testimony showed that typically, the Mules flew to Jamaica, where they were met at the airport by one of the petitioner's contacts, and then were taken to hotels or other places of lodging.  After several days, the contact re-turned to the Mules with the cocaine which then was either hidden in or on their bodies, or in their belongings.  The Mules would then smuggle the cocaine into the United States.

Upon their return to the United States, the Mules were met at the airport by the petitioner and his girlfriend.  Then, the Mules were taken to nearby locations where the drugs were re-trieved and the Mules were paid.  However, a male Mule testified to having been met in Jamaica by the petitioner, and to have turned his cocaine over to a contact of the petitioners.  However, he still was paid for his services by the petitioner.

At the conclusion of the petitioner's multi-day trial, the jury convicted him of both charges.  In response to the questions which were posed on the Special Verdict Form, the jury found that both Counts had involved 500 or more grams of cocaine powder, and that Count One also had involved 50 or more grams cocaine base.

Thereafter, a Pre-Sentence Report was prepared, noting that based upon the petitioner's extensive history of felony drug convictions, his conviction on Count One subjected him to a statutory minimum mandatory term of life imprisonment.  However, defense counsel filed objections to that Report arguing, _inter_

4

<u>alia</u>, that the drug quantity erroneously was calculated to include amounts which were in excess of those found by the jury.

Next, on September 30, 2002, the Court held the petitioner's Sentencing Hearing. At that proceeding, defense counsel took up his challenge to the calculation of the drug quantities which were being attributed to the petitioner. Upon its consideration of that matter, the Court determined that in light of the petitioner's criminal history, the jury's express finding that Count One had involved 50 or more grams of cocaine base subjected him to a mandatory life sentence without regard for any Guidelines sentencing calculations. Therefore, the objection was overruled.

The petitioner then addressed the Court, reporting his prior employment history, noting his preference to serve his sentence in Jamaica or in New York, and asking to be recommended for a prison drug treatment program. Ultimately, the Court sentenced the petitioner to a term of life imprisonment on Count One and 20 years concurrent on Count Two. The petitioner, through new counsel, timely appealed his to the Fourth Circuit Court of Appeals.

On appeal, the petitioner challenged his convictions, arguing that this Court had erred in denying his Motion to Dismiss for a violation of his statutory right to a speedy trial; and that his Speedy Trial Act rights also were violated. <u>United States v. Bartley</u>, No. 02-4810, slip op. at 1 (4th Cir. May 15,

2003). However, the appellate Court found that both claims were "meritless." Id. Thus, the Court of Appeals affirmed the petitioner's convictions. Likewise, the petitioner's Petition for a Writ of Certiorari was denied by the United States Supreme Court.

Consequently, on October 4, 2004, the petitioner returned to this Court on the instant Motion to Vacate. By his Motion, the petitioner raises nine claims which primarily are based upon his belief that his convictions and his life sentence were imposed in violation of his rights as announced by Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny, and the case of Almendarez-Torres v. United States, 523 U.S. 224 (1998), a precursor to Apprendi; and that his trial counsel was ineffective.

More precisely, by his first claims the petitioner argues that defense counsel was ineffective for his alleged failure to raise claims concerning his prior convictions under Almendarez-Torres and Apprendi, and to have a pre-trial consultation with him about his defense to those prior convictions. By his second claim, the petitioner argues that counsel was ineffective for his alleged failure to make certain pre-trial motions and objections in order to preserve those claims for appeal.

The petitioner's third claim argues that counsel was ineffective for his alleged failure to consult with and call him as a witness so that he could have denied that the voice on the government's recordings was his. The petitioner's fourth claim

repeats his third argument that counsel failed to consult with him about his defense, but further asks the Court to announce a new rule of criminal procedure in order to ensure "that a defense to the charged offense known only by the defendant personally be heard by the jury despite counsel's pretrial failure to inquire with his client."

Fifth, the petitioner argues that his life sentence was erroneously imposed because the Court failed to use a "reasonably foreseeable" analysis to determine the amount of drugs which could be attributed solely to him. By his sixth and eighth claims, the petitioner argues that his sentences violate the Eighth Amendment because counsel failed to present to the jury his defenses to the charges and to the record of his prior convictions; and that his life sentence is unconstitutional under Apprendi because the Court, not the jury, made the findings concerning his prior convictions.

By his seventh claim, the petitioner resurrects his appellate claim that his right to a speedy trial was violated. By his ninth and final claim, the petitioner argues that his sentences were imposed in violation of the rules announced in United States v. Booker, 543 U.S. 220 (2005) and Blakely v. Washington, 542 U.S. 296, (2004).

On October 4, 2004, the government filed a combined Response and Motion for Summary Judgment in opposition to the petitioner's

claims.  According to the government, the petitioner's arguments under Apprendi and its progeny must be rejected because that line of cases is not retroactively applicable in the collateral review context.

The government also argues that the petitioner's challenges to the calculation of his sentence is baseless because the jury's Special Verdict subjected him to a mandatory term of life imprisonment.  Furthermore, the government argues that this Motion to Vacate must be summarily dismissed because the issues which underlie the petitioner's claims against counsel are base-less; therefore, counsel could not have been ineffective for not having performed as the petitioner claims he should have done. In addition, the government argues that the petitioner's claims under the Speedy Trial Act are subject to summary dismissal by virtue of the Fourth Circuit's rejection of those matters.

Along with its Response and Motion for Summary Judgment, the government has submitted an Affidavit from the petitioner's trial counsel.  In that Affidavit, counsel listed some thirteen occa-sions when spoke with the petitioner, mostly by telephone, about his case prior to trial.  The Affidavit also lists four post-conviction meetings which counsel reportedly had with the petitioner.

Further, counsel's Affidavit states in pertinent part that he provided copies of "[a]ll discovery materials, proposed plea

agreements and trial pleadings were provided to [the petitioner]
in a timely fashion"; and that the petitioner initially expressed
a desire to cooperate, and it was not until mid-January 2001,
that he informed counsel that he wanted a jury trial.

With regard to the evidence which counsel believed the pe-
titioner was facing and the trial process, counsel reports that
he and the petitioner discussed the statements which were being
made by the cooperating co-defendants; that they discussed
whether or not the petitioner should have testified, with counsel
having explained the benefits and risks of that decision; that
the petitioner indicated that he did not wish to testify; and
that the petitioner's position on the evidence merely was that
his co-defendant's were lying, and he was not the person about
whom the witnesses were talking.

Moreover, counsel's Affidavit further states that the peti-
tioner did not offer any information concerning a possible alibi
defense during their pre-trial discussions.  Further, counsel's
Affidavit states that during the trial, the petitioner did not
offer any new defense possibilities, express a desire to testify,
or challenge the record of his prior convictions.  In fact,
counsel's Affidavit reports that it was not until after the
petitioner's Pre-Sentence Report was prepared that he began to
challenge his prior convictions.

Counsel's Affidavit further also states that he objected to

the Report based upon the petitioner's contentions and based upon the drug quantity which was being attributed to the petitioner. However, the Affidavit notes that the Probation Officer's response, which included the petitioner's finger print records, convinced the Court that the convictions were legitimate, and the drug quantity was correct.

Counsel's Affidavit also reports that after sentencing, he sent the petitioner a copy of his Judgment despite his knowledge that the petitioner had retained new counsel for the appeal. However, counsel received that Judgment back from the petitioner after it had been torn to pieces. In support of counsel's declarations, the government submitted copies of counsel's Memorandum of enclosure which he sent to the petitioner on the occasions when counsel dispersed the aforementioned materials.

Last, the government attached a page from the trial transcript. Such attachment reflects that at the time that the government rested its case, the petitioner made no comment when the Court, outside of the presence of the jury, repeated counsel's representation that he was not going to testify. The attachment further reflects that the petitioner remained silent when the Court announced that decision to the jury, and explained his constitutional right to remain silent and maintain the presumption of his innocence.

On March 2, 2005, the "Petitioner's Response To Government's

Motion For Summary Judgment" was filed.  In that multi-page document, the petitioner mostly attempted to respond to the assertions made in counsel's Affidavit.  However, due to the internal inconsistencies of the petitioner's declarations, his Response is of questionable value.

For instance, at one point the petitioner declares under penalty of perjury that the only time that he and counsel discussed the evidence was on the single occasion when counsel read the Indictment to him.  However, on the very next page of that same document, the petitioner reports that he and counsel discussed the statements of his co-defendants on an occasion when counsel visited him to advise that his co-defendants were cooperating with the government and making statements against him. Later in that Response, the petitioner also reports that on three separate occasions, he and counsel had discussions during which he told counsel, in response to the evidence, that he wanted to defend himself by admitting that he merely had sold small amounts of marijuana, not cocaine.

Likewise, despite the petitioner's declaration that he and counsel did not discuss his case, his Response also reports that the two actually discussed an individual named Ernest Hollis, who the petitioner claims was willing to testify that he knew that the petitioner and the petitioner's girlfriend (Hollis' sister) had only sold marijuana, and had nothing to do with powder co-

caine smuggling or powder and crack distribution. The petitioner even states that counsel initially agreed to send an investigator to Hollis, but later declined to do so when counsel learned that Hollis had agreed to be a witness for the government. In any case, the petitioner concedes that Hollis did come to Court to testify for the government, but never was called to the stand.

Similarly, notwithstanding his representation that he and counsel did not discuss his case, the petitioner's Response reports that they discussed the government's evidence of his Western Union transactions; and that he admitted to counsel that 14 of the transactions were for marijuana sales which he had made. Further, the petitioner reports that he told counsel that "most," that is 12, of the remaining 38 transactions could not have involved him because he was in pre-trial detention by the time that they were completed.

Further, the petitioner claims that he and counsel had not discussed his contention that the telephone conversations which were in the government's discovery materials "were not the words of petitioner . . . ." However, in the same paragraph, the petitioner also reports that he, in fact, told counsel "that the voice on those tapes was the voice of Ernest Hollis."

Turning to his "Reply To Government's Response To Motion To Vacate . . . ," there the petitioner attempts to dissect coun-sel's Affidavit in order to explain away his own inconsistencies.

For instance, the petitioner's Reply claims that the word "discussed" as used by counsel was "not accurate in the context of the Sixth and Fifth Amendment"; and that although he had nodded in agreement to counsel's in-court representation that they had "consulted" about his case, that representation was inaccurate. In an effort to overcome counsel's representations that the petitioner's proposed strategy was merely to proffer his own unsubstantiated denials, the petitioner's Reply argues that counsel's assertion is evidence of counsel's mistaken belief that he had a responsibility to assist with his own defense.

Further, the petitioner's Reply attempts to overcome the government's arguments on the merits of the claims with numerous rejoinders. For example, the petitioner argues that he is not seeking the application of Apprendi here, but instead is arguing that counsel was ineffective for having failed to understand how Apprendi and Almendarez-Torres could have been used in his defense. Presumably in the alternative, the petitioner also argues that certain Supreme Court precedent dictates "[t]hat Apprendi is available on collateral review"; that other High Court precedent required the jury, not the Court, to determine his criminal history; and that the holdings from Booker and Shepard v. United States, 544 U.S. 13 (2005) also can be used for this collateral challenge because the rules announced in those cases were dictated by precedent which preceded his case.

The petitioner's Reply also purportedly clarifies that counsel was ineffective, not for failing to challenge the sufficiency of the Indictment, but for failing to understand that although the Indictment "<u>was sufficient</u> with its inclusion of [his] prior convictions," the petitioner had the right to "decide[] whether or not to contest the facts of the priors before the Jury" (emphasis in original). The petitioner further asserts that notwithstanding his life sentence exposure under the statute, certain Fourth Circuit precedent still required the trial Court to find a specific threshold quantity.

Furthermore, the petitioner's Reply admits that counsel complied with his request to challenge the amount of cocaine which was being attributed to him. Nevertheless, the petitioner argues that counsel was ineffective for having failed to also argue--despite the jury's verdict--that the petitioner dealt only in a small amount of marijuana. Last, the petitioner's Reply contends that his claims are not subject to procedural default, essentially because he can establish that the above-noted errors undermine confidence in his convictions.

Notwithstanding his obvious beliefs to the contrary, however, the Court carefully has considered the foregoing claims, along with the parties' rejoinders. On the basis of that review, the Court has determined that the petitioner cannot prevail on any of his claims.

## II.  **ANALYSIS**

### 1.  **The petitioner's speedy trial claim is foreclosed by the appellate Court's rejection of that matter**.

On appeal, the petitioner specifically argued that this Court erred in denying his Motion to Dismiss for an alleged violation of his right to a speedy trial; and that his rights under the Speedy Trial Act had been violated.  However, the appellate Court flatly rejected those claims, expressly finding that both were "meritless."  Bartley, No. 02-4810, slip op. at 1 (4th Cir. May 15, 2003).  Nevertheless, by his seventh claim, the petitioner again argues that his right to a speedy trial was violated.

However, it is well settled that in the absence of a favorable, intervening change in the law which can be applied on collateral review, a petitioner simply is not free to re-litigate claims which already were rejected on direct review.  Davis v. United States, 417 U.S. 333, 342 (1974); Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir.), cert. denied, 429 U.S. 863 (1976).  Accordingly, inasmuch as the petitioner has not directed the Court's attention to any intervening change in the law which would authorize him to reassert this claim, the same is procedurally barred.[2]

---

[2]Moreover, to the extent that the petitioner is attempting to argue that counsel was ineffective for having failed to secure a speedy trial for him, such claim still must fail.  That is, the record reflects that the Court

## 2. **The petitioner's fifth, sixth and eighth claims also must be rejected**.

By the above-noted claims, the petitioner argues that his life sentence is unconstitutional because the Court erroneously failed to use a "reasonable foreseeability" analysis to determine the amount of drugs which were attributable to him personally; that his life sentence violates the Eighth Amendment because counsel failed to present to the jury his defenses to the charge and to his prior convictions; and that his sentences are unconstitutional under <u>Apprendi</u> because this Court, not the jury, made the findings concerning his prior convictions.

However, as to the petitioner's "reasonable foreseeability" argument, the record is clear that such claim was procedurally defaulted on appeal and, therefore, cannot be raised here.

In <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-93 (4th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1010 (2000), the Court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result

---

granted one continuance for petitioner's counsel, but several for his co-defendants.  Thus, the petitioner's counsel had no control over the timing of the petitioner's trial, since this Court likely would not have severed the defendants cases, but instead would have followed the well-settled rule that "[b]arring special circumstances, individuals indicted together should be tried together."  <u>United States v. Brugman</u>, 655 F.2d 540, 542 (4th Cir. 1981).

from the refusal of the court to entertain the collateral at-

tack." Id., citing United States v. Frady, 456 U.S. 152 (1982);

see also Bousley v. United States, 523 U.S. 614, 621 (1998)

(failure to challenge matter on direct appeal, absent certain

compelling circumstances, bars collateral review of same); and

Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

Here, the petitioner holds up trial counsel's alleged

failure to object to the Court's calculations as cause for his

default of this claim on appeal.  However, the record shows--and

the petitioner ultimately conceded--that defense counsel did, in

fact, challenge the Court's method of calculating his sentence.

Thus, the record is clear that the petitioner's appellate coun-

sel--against whom he does not set forth a single allegation of

ineffectiveness--could have challenged the calculation of the

life sentence on appeal had counsel chosen to do so.

In short, therefore, the petitioner has procedurally de-

faulted his claim, and has failed to establish an excuse for that

default.  Equally critically, in the absence of such an excuse,

the Court must summarily reject this claim.

As for his eighth claim, contrary to the petitioner's

belief, the rule from Apprendi does not require the jury to de-

termine the status of a defendant's criminal record.  In fact,

Apprendi's holding specifically exempts such matters from the

jury's consideration, stating that "other than the fact of a

prior conviction, . . .” the jury is to consider all facts which could increase the penalty for a crime beyond the prescribed statutory maximum term. Apprendi, 530 U.S. 490. Therefore, counsel had no basis to argue that the Court should have allowed the jury to determine the status of the petitioner's record.

Moreover, as to the petitioner's claim that his life sentence is unconstitutional because counsel failed to present certain defenses to the jury, such claim is feckless for several reasons. At the heart of this claim is the petitioner's belief that his life sentence is not supported by the jury's verdict. However, even assuming that such claim is accurate, on this record the petitioner still cannot prevail.

That is, the petitioner received a life term on Count One based upon the jury's finding that the conspiracy which he led had trafficked in 50 grams or more of crack cocaine, but there was no specific finding of the amount of crack which could be attributed solely to the petitioner. However, the petitioner's life sentence still is proper because it is well supported by the record before the Court.

That is, this Court expressly finds that the overwhelming and uncontroverted evidence which was presented by the government leaves no doubt that a properly instructed jury would have found that the petitioner personally had distributed more than 50 grams of crack cocaine under Count One of the Indictment. See United

States v. Cotton, 525 U.S. 625, 632-33 (2002) (assuming substan-
tial rights are affected by failure to submit question of drug
quantity to jury, but finding that error did not seriously affect
fairness, integrity, or public reputation of judicial proceedings
where "evidence . . . was 'overwhelming' and 'essentially'
'uncontroverted'").

Indeed, the testimony at trial made it clear that the peti-
tioner was, at the very least, the co-leader of the subject
conspiracy, and he orchestrated, inter alia, the distribution of
all of the crack with which the conspiracy dealt. Co-defendant
John Johnson testified, in part, that in the Fall of 1999, he
moved to Charlotte and became reacquainted with the petitioner;
and that shortly after resuming contact, he made a 9 ½ ounce
crack cocaine purchase from the petitioner, followed by numerous
other 2 to 4 ounce crack purchases at two to three week
intervals. Johnson also testified that the largest single pur-
chase that he made from the petitioner was for 5 ounces of crack;
and that his dealings with the petitioner lasted for about a
year, but came to an end when the petitioner became unable to
hire Mules to smuggle the cocaine into the Country for him.

In addition, the government called Mary Avery as a witness.
Avery was Johnson's girlfriend/business partner, and is the
cousin of Wanda Francis. Avery corroborated Johnson's testimony
about his on-going crack cocaine deals with the petitioner;

however, she speculated that the crack transactions had involved
between 2 to 3 ½ ounces per package.

Wanda Francis also testified against the petitioner.  Ms.
Francis told the jury about the three trips which she made to
Jamaica in order to smuggle the powder cocaine which was cooked
into crack and distributed by the petitioner.  Tammy Johnson also
testified about the occasion on which she worked as a Mule for
the petitioner, bringing two large packages of cocaine powder
from Jamaica to the United States.  According to Ms. Johnson, the
packages were so large that they had to be strapped to the in-
sides of her thighs.  These witnesses also identified the
petitioner's voice on the government's tape recordings, and they
corroborated one another's individual testimony.

And, if the foregoing were not enough, the government pre-
sented the case agent's testimony.  Such testimony established
that the agent had investigated this case from the time that
Wanda Francis was caught at the Charlotte-Douglas Airport while
trying to smuggle drugs into the Country.  The agent's testimony
further showed that, consistent with many drug traffickers, the
petitioner conducted numerous financial trans-actions with and
through his co-defendant girlfriend, often using assumed or
fictitious names; that petitioner sent and received numerous
money wires through Western Union; that some of those wires were
sent to and from Jamaica; that the petitioner and his girlfriend

had secured apartments and cellular telephones through straw or nominee purchaser/consumers; and that neither had verifiable income to support their lifestyle.

Although the petitioner believes that he could have rebutted that evidence had counsel called him as a witness, his argument is unconvincing. That is, the petitioner's numerous Affidavits reflect that had he taken the stand, he would have admitted that in 1999, he reconnected with Johnson and conducted bi-monthly drug deals with him for about a year; that on those occasions, he saw Mary Avery. Howver, the Affidavits further show that the petitioner would have claimed that the subject deals with Johnson had involved marijuana, not any form of cocaine; that the money wires had involved payment for marijuana deals; and that he previously had sustained cocaine-related convictions, but only because he was protecting someone else.

Furthermore, the petitioner's Affidavits show that he would have denied that he had any part in his girlfriend's (Michelle Massey) cocaine importation business; that he was present on the occasions when she discussed that business with Avery, Francis or Tammy Johnson; that he ever hired anyone as a Mule for smuggling cocaine into the United States; and he would have denied that he was the person on the government's recordings.

Nevertheless, this Court finds that even if the petitioner had testified as described, the jury had more than ample reason

to reject his testimony and find that he personally had distributed 50 grams or more of crack.  Therefore, the petitioner's life sentence does not violate any of his constitutional rights.

### 3.  The petitioner's claim of Blakely and Booker error is not cognizable in this collateral proceeding.

By his ninth claim, the petitioner argues that his sentences were imposed in violation of the rules announced in United States v. Booker, 543 U.S. 220 (2005) and Blakely v. Washington, 542 U.S. 296 (2004).  Notwithstanding the fact that neither of these cases had been decided at the time that the petitioner was convicted and sentenced in 2002, there is an equally significant reason why this claim fails.

Indeed, it is now abundantly clear that the rules which were announced in Blakely and Booker are not applicable in collateral proceedings such as this one.  See United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005) (holding that Booker is not retroactively applicable on collateral review); and United States v. Fowler, No. 05-6493, slip op. at 1 (W.Va. June 17, 2005) (holding that "neither Booker nor Blakely announce a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.").  See also United States v. Sanders, 247 F.3d 139 (4th Cir.) (holding that Apprendi, the progenitor to Booker and Blakely, is not retroactively applicable to cases which are before the Court on collateral review), cert. denied,

534 U.S. 1032 (2001)).   Therefore, this claim must be rejected.

   4.   **The petitioner's claims that counsel**
        **was ineffective for failing to raise,**
        **preserve and discuss his issues under**
        **Apprendi and Almendarez-Torres also fail**.

   By his first claim, the petitioner argues that counsel was
ineffective for having failed to fully understand the Apprendi
and Almendarez-Torres opinions so that he could have argued that
the petitioner's prior convictions were facts which needed to be
presented and proven to the jury.  The petitioner further argues
that counsel failed to discuss those matters with him so that he
could have decided whether or not testify in order to deny and/or
explain the circumstances of his prior convictions.  By his
second claim, the petitioner argues that counsel's failure to
raise those matters further prejudiced him by foreclosing his
ability to raise them on direct appeal.

   With respect to claims of ineffective assistance of counsel,
a petitioner must show that counsel's performance was constitu-
tionally deficient to the extent it fell below an objective
standard of reasonableness, and that he was prejudiced thereby.
Strickland v. Washington, 466 U.S. 668, 687-91 (1984).  In making
this determination, there is a strong presumption that counsel's
conduct was within the wide range of reasonable professional
assistance.  Id. at 689; see also Fields v. Attorney Gen. of Md.,
956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865
(1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir.

23

1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Mary-</u><u>land</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

Further, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under. . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993). In the instant case, the petitioner cannot establish that he is entitled to relief based upon counsel's performance

Here, the petitioner argues that the government chose to list his prior convictions within the two Counts in his Indictment, despite the fact that such convictions already were set out in a §851 Notice. Therefore, the petitioner claims that the government was not entitled to redact that information from the

Indictment.  Rather, the petitioner contends that since he denied the validity of at least two of the prior convictions, his attorney should have required the government to use a Special Verdict form so that the jury could have determined whether or not he had sustained the subject convictions.  In purported support of this argument, the petitioner again relies on the portions of his Affidavits in which he asserts that several of his earlier guilty pleas were prompted solely by his desire to protect a girlfriend from threats of prosecution.

The simple problem with the petitioner's claims, however, is that neither the holding from <u>Apprendi</u> nor the majority opinion in <u>Almendarez-Torres</u> stand for the proposition that a defendant's prior criminal record must be proven to a jury beyond a reasonable doubt.  Indeed, as was earlier noted by this Court, <u>Apprendi</u> expressly exempts prior criminal records from the list of facts which must be proven to a jury.

Furthermore, the majority decision in <u>Almendarez-Torres</u> rejected the idea that the government should have to prove to the jury a defendant's prior convictions, since such evidence "risks significant prejudice." 523 U.S. 235.  Rather, <u>Almendarez-Torres</u> stands for the proposition that the fact of a defendant's recidivism, including the prior convictions which make him a recidivist, are not elements of an offense which need to be proven to a jury beyond a reasonable doubt.  <u>Id</u>. at 247.

Petitioner points to the dissent in Almendarez-Torres, suggesting that statutes which require enhanced sentences upon certain conditions are separate offenses which must be proven to a jury, Id. at 270-71, that dicta obviously does not have controlling weight. See generally Duckworth v. State Bd. of Elections, 213 F.Supp.2d 543, 556 (D.Md. 2002). Ultimately, therefore, defense counsel could not have been ineffective for having chosen not to argue that the government was required to prove the petitioner's prior convictions to the jury, or for having chosen not to elicit testimony from the petitioner either to refute or explain such prior convictions.

>    5.   **The petitioner also cannot prevail with his claim that counsel was ineffective for having failed to elicit testimony concerning the voice on the recordings and the nature of of his drug deals**.

By his third claim, the petitioner alleges that counsel was ineffective for having failed to call him as a witness so that he could have denied that he was the voice on the government's recordings, or that he dealt in cocaine. Again, the petitioner claims that he would have admitted that he dealt in small amounts of marijuana, and such testimony would not have exposed him to the sentences which he received.

The law is well settled that "a criminal defendant has a constitutional right to testify on his own behalf at trial." United States v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003).

However, the "advice provided by a criminal defense lawyer on whether his client should testify is a 'paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" <u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002); <u>quoting</u> <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1436 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984).

As was noted, the petitioner initially denied that he and his attorney ever discussed the evidence which he was facing, but subsequently conceded that numerous discussions had taken place concerning that matter. For his part, counsel has asserted that he and the petitioner discussed the evidence, and their strategy to defend against that evidence. Counsel further asserted that he explained the benefits and disadvantages of the petitioner's testifying; and that based upon that explanation, the petitioner chose not to testify.

Moreover, as was earlier recounted, the petitioner remained silent when the Court addressed those matters with counsel and the jury. Thus, in light of the specific allegations and the relevant law, this Court cannot conclude that counsel performed deficiently in connection with his trial preparation.

Furthermore, the record before the Court reflects that even if counsel were deficient for having failed to elicit the subject testimony, the petitioner still cannot establish any prejudice on this claim. On the contrary, as was previously recounted by this

Court, the government produced a great deal of testimony against the petitioner, which testimony further was buttressed by numerous pieces of documentary evidence, including telephone and Western Union records.  The witnesses who gave that testimony also identified the petitioner's voice on the tape recordings.

Based upon this record, then, the petitioner cannot possibly establish that had he taken the stand and merely attempted to deny or minimize this evidence, the jury would have credited his naked testimony over the government's well-documented presentation.  Thus, this claim against counsel also must fail.

**6.  The petitioner's claim that this Court should announce a new rule of criminal procedure is feckless**.

By his remaining claim (claim four), the petitioner repeats a portion of his third claim, arguing that counsel was ineffective for having failed to consult with him about his defense.  However, the petitioner further argues that this Court should announce a new rule that a defense to charges which is "only known by the defendant personally . . . ." must be heard by the jury, suggesting that defense counsel always should call the defendant as a witness.  Suffice it to say, however, this claim must fail.

First, this Court already has put to rest the notions that counsel failed to consult with the petitioner as required under the law, or that he erroneously failed to call the petitioner as

a witness during his trial.

Second, it goes without saying that this Court does not have the authority to announce new rules of criminal procedure. Rather, it is the function of this Court to properly identify and apply those rules of criminal procedure which already have been announced by the appellate Courts to which this Court ultimately must answer. Thus, this claim must be rejected in its entirety.

**7. The petitioner's proposed amend-
ments must be rejected**.

Finally, on November 2, 2006, the petitioner filed a document captioned as a "Motion Requesting Leave From The Court To Amend 28 U.S.C. § 2255 Pursuant To Federal Rules Of Civil Procedure - Rule 15(a)." In that Motion, the petitioner seeks to argue that he is "actually innocent" of his life sentence because the jury was never required to determine the amount of drugs which were attributable to him personally as required under the Due Process Clause, United States v. Vazquez, 271 F.3d 93, 107 (3rd Cir. 2001), Apprendi, and under a host of other cases.

However, this Court already has concluded that notwithstanding the absence of a jury finding concerning the amount of drugs which were attributable to the petitioner, the evidence in this case establishes that a properly charged jury would have found facts to support the sentence which was imposed. Therefore, even assuming that the proffered claim can be deemed timely filed under the "relation back" doctrine, see United States v.

<u>Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000) (discussing relation back doctrine), this Motion to Amend still must be denied as moot.  <u>See</u> <u>New Beckley Mining Corp. v. Int'l Union</u>, 18 F.3d 1161, 1164 (4th Cir. 1994) ("[a] court may refuse to allow leave to amend when the proposed changes would be futile."); <u>accord</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

Also, on January 8, 2007, the petitioner filed a letter motion to amend, seeking to add the case of <u>Lopez v. Gonzales</u>, 127 S.Ct. 625 (2006) as authority for one or more of his otherwise unidentified claims.  However, that case stands for the proposition that in the context of a deportation proceeding, an alien can challenge whether the definition of a "drug trafficking crime" under Title 21 also meets the test of a felony drug conviction under the Immigration and Naturalization Act.  Here however, there were no claims relating to deportation. Therefore, inasmuch as the Court cannot determine which of the petitioner's claims that case could relate, and a new allegation relating to deportation clearly would be time-barred, this <u>de facto</u> motion to amend also must be denied.

### III.  <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  That the petitioner's two requests for Leave to Amend (documents ## 10 and 11) are **DENIED;**

2.  That the government's Motion for Summary Judgment

(document # 6) is **GRANTED;** and

    3.  That the petitioner's Motion to Vacate is **DENIED and**

**DISMISSED.**

    **SO ORDERED.**

Signed: October 9, 2007

Graham C. Mullen
United States District Judge